UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO: 04-30046-MAP |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ALBERT INNARELLI, ET AL. | : | SEPTEMBER 19, 2006 |

### DEFENDANT'S REPLY TO THE GOVERNMENT'S SENTENCING MEMORANDUM

The Defendant, Albert Innarelli ("Mr. Innarelli" or "Defendant") respectfully submits this memorandum in reply to the Government's sentencing memorandum, which was received by undersigned counsel on September 18, 2006.

As the Defendant asserted in his objections to the Presentence Report, he again objects to any reference to properties/loans listed in the Government's "attachment A" that are not already listed in the superseding indictment. The Court should not consider any portion of the Government's argument encouraging the Court to factor into its sentence determination the belated and untested allegations regarding additional properties/loans. The Court should not consider these properties as a basis upon which to increase the Defendant's sentence within the Guidelines, or even as a sentencing factor pursuant to 18 U.S.C. §3553.

The Defendant requested a continuance of his sentencing in order to respond to these eleventh hour allegations. The Court denied the requested continuance[1] on the grounds that

---

[1] The Court did grant the Defendant a continuance of six days, but did not grant the Defendant the full extent of his request.

the Court would not consider the additional allegations as relevant conduct at sentencing, and would limit its considerations to the properties listed in the indictment.

On August 31, 2006, during oral argument related to the Defendant's motion to continue the sentencing, the Court ruled that it would not consider properties/loans outside of those listed in the superseding indictment as relevant conduct. The ruling was based on the Court's determination that the Government had not provided the defendants with sufficient notice as to the relevance of the additional properties or the manner in which the Government would use them. Again, on September 1, 2006, during argument on the appropriate loss methodology to utilize in this case, the Court reiterated its ruling of August 31, 2006, that it would not consider properties outside of those listed in the indictment as relevant conduct.

Notwithstanding this recent procedural history, the Government has beseeched the Court to consider those properties in some manner, for the effect of increasing the Defendant's sentence. The Government is essentially asking the Court to vitiate the underpinnings of its earlier ruling, as well as the principle that the Defendant must have sufficient notice of conduct which the Government intends to use to enhance his sentence; indeed, such notice is required under the sixth and fourteenth amendments of the United States Constitution. See United States v. Brumfield, 301 F.3d 724, cert. denied, 537 U.S. 1079 (7th Cir. 2002) (principles of due process require that a defendant receive notice of, and an opportunity to respond to, factors relied upon in his sentencing).[2]

---

[2] See also United States v. Pandiello, 184 F.3d 682, 686 (7th Cir. 1999);

The Government has asserted, at pages 2-3 of its memorandum, that Mr. Innarelli pleaded guilty to the full scope and breadth of the charged scheme. To be precise, which is required in this sentencing process, Mr. Innarelli entered guilty pleas to 67 of the 68 wire fraud counts, and to one count of conspiracy to commit money laundering.

The Government's blanket assertion at pages 4-5 of its memorandum, that the buyers were unsophisticated, "first time home buyers who thought that they were about to realize the American Dream," is misleading and inaccurate, to the extent that it is intended to apply to the buyers as a whole. The Defendant maintains, as evidenced at pages 10-13 of his sentencing memorandum, that numerous buyers were complicit in the fraud and were not innocent dupes.

The Government's claim at page 5 of its memorandum, that Mr. Innarelli did not allow the buyers to read the closing documents thoroughly and "rushed" them through the closing, is based on the subjective interpretations of what the Government has described as a group of inexperienced buyers. Certainly if the Court were to poll the first time buyers whose closings are not the subject of a Federal prosecution, such buyers would indicate similar feelings and impressions about their closings as those expressed by some of the

---

Burns v. United States, 501 U.S. 129, 134 (1991) (Fed. Rule Crim. Pro. 32, the provision governing sentencing procedures, "provides for focused, adversarial development of the factual and legal issues relevant to determining the appropriate Guidelines sentence"); United States v. Thomas, 969 F.2d 352, 356, cert. denied, 506 U.S. 896 (7th Cir. 1992) (parties, particularly the defendant, must have notice of the factual and legal issues that the district court will consider in making its sentencing determination).

buyers in the case at bar. The evidence, lacking any inquiry of customary first time buyers, does not allow a conclusion that these closings were fundamentally different.

The Government's assertion at page 5 of its memorandum, that Mr. Innarelli "pocketed the money" that was to be paid toward taxes and water bills, similar to the Government's argument that Mr. Innarelli received incentive payments in the form of "large checks" written to himself from his Iolta account, remains totally unsubstantiated. The Government has never identified any checks that were so-called "incentive payments", nor the amounts of said claimed payments and any properties to which they applied. The non-criminal explanations for these checks include that Mr. Innarelli would oftentimes aggregate his fees for five or six closings and take them in lump sum payments.

The Government's argument at pages 5-6 of its memorandum regarding the community impact of Mr. Innarelli's offense lacks foundation and is worse than pure speculation. It is wrong. The Government's claim that the offense somehow precluded "legitimately qualified" buyers with the "wherewithal to improve and rehabilitate their homes" from purchasing properties that the Government has repeatedly described as distressed and essentially ravaged (lacking plumbing, boilers, with extensive interior damage), cites no facts, nor can it, to suggest that such properties would be desirable to "legitimately qualified" buyers willing to risk purchasing them.[3]  Indeed, any such

---

[3] The Government has, in prior submissions, asserted without proper foundation that loans on the properties exceeded their value by 200% to 300%. The complete and detailed study proffered by the Defendant's highly qualified expert, thoroughly belies this groundless claim. To the extent that this statement is related to a comparison of the loan amount to the purchase price paid by the defendant buyers at auction, as opposed to the

legitimately qualified buyers had literally thousands of similar properties available to them, unaffected by the 96 loans represented in this case over four or five years; a number indisputably inconsequential to the operation of the market. Were the Court to consider the testimony of the Defendant's expert, it would be made clear that mortgage loans average a life under seven years; the very small fraction of the large market in Springfield in which these loans operated is statistically insignificant to any market conduct.

The Government finally betrays the angry intent of its insertion of raw and inaccurate speculation: it seeks to inflame this Court with the even more spurious inference that these fictitious "legitimately qualified" buyers would then improve their homes, make personal and financial investments into the neighborhoods, and "*hopefully* kick start an economic and communal rejuvenation of these neighborhoods." (Emphasis added) See *Government's Memo at 6*. The Court has enough to do in this sentencing proceeding, focusing on the law and the facts in this case, without the Government's unfair demonizing of the Defendant as responsible for impeding what one representative of the Government *hopes* would have occurred if such nonexistent qualified buyers came along and invested in these 96 properties.

The Government's unsound community impact argument should not be considered, other than to lay bare some of the baseless, prejudicial thinking underlying the urge for a severe sentence in this matter. What might sometimes be laudable prosecutorial enthusiasm can also be dangerous, when the fervor infects a presentation of voluminous facts, and

---

normal fair market value of a property, it is skewed and misleading, and therefore not an accurate reflection of the market.

- 6 -

where the Court is charged with carefully considering myriad details that it must evaluate in order to reach a fair and balanced sentence.

          THE DEFENDANT,
          ALBERT INNARELLI

By: *[signature]*
      James W. Bergenn
      Moira L. Buckley
      Shipman & Goodwin LLP
      One Constitution Plaza
      Hartford, CT 06103-2819
      (860) 251-5000
      (860) 251-5219 (fax)
      jbergenn@goodwin.com
      mbuckley@goodwin.com
      His Attorneys

## CERTIFICATION OF SERVICE

   I hereby certify that the foregoing Reply to the Government's Sentencing Memorandum was filed electronically on this 19th day of September, 2006, and faxed to following parties:

William M. Welch, II
U.S. Attorney's Office
Suite 310
1550 Main Street
Springfield, MA 01103
413-785-0237
Fax: 413-785-0394

Richard Rinaldi
U.S. Probation Officer
Probation Department
1550 Main Street, Rm 212
Springfield, MA 01103
413-785-0250
Fax: 413-785-0257

                   /s/ Moira L. Buckley
                   Moira L. Buckley