UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR NO. 04-30046-MAP |
| | ) | |
| ALBERT V. INNARELLI, | ) | |
| Defendant | ) | |


ORDER RE: REMAND REGARDING RESTITUTION

May 2, 2008

PONSOR, D.J.

On April 29, 2008, the United States Court of Appeals for
the First Circuit remanded this case for recalculation of the
court's restitution order.

Counsel for Defendant will file a memorandum regarding
the recalculation on or before May 29, 2008.  The government
will file its response no later than June 27, 2008.  Counsel
will appear for argument on the issue of restitution on July
2, 2008 at 3:00 p.m.

It is So Ordered.

_____
MICHAEL A. PONSOR
United States District Judge

# United States Court of Appeals
## For the First Circuit

No. 06-2400

UNITED STATES OF AMERICA,

Appellee,

v.

ALBERT V. INNARELLI,

Defendant, Appellant.

**JUDGMENT**

Entered:  April 29, 2008

This cause came on to be heard on appeal from the United States District Court for the District of Massachusetts and was argued by counsel.

Upon consideration whereof, it is now here ordered, adjudged and decreed as follows: Albert V. Innarelli's sentence is affirmed. The order of restitution is vacated and remanded for recalculation in a manner consistent with the opinion issued this day.

By the Court:

/s/ Richard Cushing Donovan, Clerk

cc: Hon. Michael A. Ponsor, Ms. Sarah Thornton, Clerk, United States District Court for the District of Massachusetts, Mr. Quilivan, Mr. Welch, Mr. Newhouse, Ms. Chaitowitz, Ms. Caddick, & Mr. Smyth.

# United States Court of Appeals
## For the First Circuit

No. 06-2400

UNITED STATES OF AMERICA,

Appellee,

v.

ALBERT V. INNARELLI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Torruella, Lynch, and Lipez,
Circuit Judges.

Elizabeth Caddick, for appellant.
Mark T. Quinlivan, Assistant United States Attorney, with whom
Michael J. Sullivan, United States Attorney, was on brief for
appellee.

April 29, 2008

Martínez-Bermúdez, 387 F.3d 98, 99 (1st Cir. 2004) (quoting United
States v. Brewster, 127 F.3d 22, 24 (1st Cir. 1997)).

Between 1999 and 2001, Innarelli and twelve
coconspirators devised and perpetrated an elaborate land-flipping
scheme in the Springfield area. The scheme was effected through
the coordinated activities of four separate groups of
coconspirators. The first group -- the "land-flippers" --
purchased low-value, distressed properties, usually at auction.
Many of these properties needed repairs or had housing-code
violations, and some were condemned. This group then sold the
properties at greatly inflated prices to unwitting and typically
unsophisticated buyers, most of whom had low income, bad credit, or
both. In order to obtain financing for the buyers, a second group
of coconspirators consisting of mortgage brokers generated
documents falsely representing to lending institutions that the
buyers had the financial wherewithal to afford mortgage loans. A
third group consisting of property appraisers falsely inflated
their appraisals of the properties, in order to give the lenders
the impression that the properties were worth as much as they were
being sold for. Innarelli, the sole lawyer in the scheme, made up
the final component of the conspiracy: he prepared and signed off
on closing documents which contained false information, and
prepared false titles to show that the land-flippers had held title

district court sentenced Innarelli in a hearing on September 20, 2006. The court assigned to Innarelli a criminal history category ("CHC") of I and an offense level of 26. This offense level consisted of several components, one of which is at issue on appeal: an eighteen-level increase resulting from the district court's determination that Innarelli intended to cause the victims to suffer a loss of between \$2.5 million and \$7 million. See U.S.S.G. § 2B1.1(b)(1)(J) (2006). CHC I and an offense level of twenty-six produced a Guidelines Sentencing Range ("GSR") of sixty-three to seventy-eight months. The district court rejected Innarelli's argument that he deserved a below-Guidelines variance due to several unique personal circumstances -- such as past drug addiction and two young children -- and sentenced him in the middle of the range to seventy-two months' imprisonment.

The district court also ordered Innarelli to pay restitution to certain of the victims. See 18 U.S.C. § 3663A (2000) (restitution mandatory where defendant has committed an offense against property with fraud or deceit). The court determined that Innarelli owed restitution to lender Equicredit (now Bank of America) in the amount of \$1,206,858; to lender National City in the amount of \$17,000;[3] and to seven victim-buyers in the amount of \$10,000 each. We examine the district court's

---

[3] There were several other victim-lenders, but the restitution order only applied to Equicredit and National City.

The Guidelines commentary instructs that loss in this instance should be the greater of "actual loss" or "intended loss." Id. § 2B1.1 cmt. n.3(A).  We recently clarified that "intended loss" in these circumstances is a term of art meaning the loss the defendant reasonably expected to occur at the time he perpetrated the fraud.  See McCoy, 508 F.3d at 79 (also remarking that "expected loss" would have been a better term in the Guidelines commentary than "intended loss").  In other words, for purposes of determining a defendant's sentence (but, importantly, not the amount of restitution he may be required to pay),[4] the Guidelines anticipate that the defendant will be punished commensurate with the degree of loss he reasonably expected to occur as long as this amount is greater than the victims' actual loss -- including where the victims actually incurred no loss at all.  See id.

At sentencing, the district court first determined the total amount of the loan issued for each of the flipped properties, and subtracted from that number the considerably lower amount the land-flippers paid for the piece of property in question.  This latter quantity served as a proxy for the true amount of the security the lender held on the property.  After performing this calculation for each of the more than 100 flipped properties, the

---

[4] As discussed below, for purposes of determining the restitution portion of a defendant's punishment, only actual loss  may be taken into account.  See United States v. Swanson, 394 F.3d 520, 527 (7th Cir. 2005).

-7-

Despite McCoy, Innarelli argues that he should not be held responsible for the entire difference between the land-flippers' purchase price and the sale price with respect to each and every piece of property, for two reasons.  First, he claims he never intended the buyers to default on their mortgages and he never intended the lenders to foreclose; as a real-estate lawyer, his reputation and continued good business depended on the success of the property transactions he helped to effect.  Second, some of the buyers were able to continue making payments and did not default on their loans.  Even when buyers defaulted, moreover, many of the properties in fact appreciated in value after the frauds and before the lender resold them after foreclosure, and so many of the lenders suffered no actual loss as a result of the scheme.  In fact, some even turned considerable profits.

Both these arguments must fail in light of what we have said above.  Notwithstanding the Guidelines commentary's use of the word "intended," we focus our loss inquiry for purposes of determining a defendant's offense level on the objectively reasonable expectation of a person in his position at the time he perpetrated the fraud, not on his subjective intentions or hopes.  See id.[6]  Moreover, as already noted, it is immaterial that many of

[6]  While McCoy suggests in passing that a subjective component may play some role in the intended-loss inquiry, McCoy, 508 F.3d at 79 (noting that intended loss might be zero "if the defendant sincerely intended and reasonably expected fully to repay the loan" (emphasis added)), it is clear that under these facts the objective

-9-

explanation for any deviation from the Guidelines range.'"  Id.
(quoting Gall, 128 S. Ct. at 597) (alterations omitted).  If this
review reveals no abuse of discretion, we then examine the
substantive reasonableness of the sentence in the totality of the
circumstances, again for abuse of discretion.  United States v.
Martin, No. 06-1983, 2008 WL 748104, at *5 (1st Cir. Mar. 21, 2008)
(citing Gall, 128 S. Ct. at 597).  The district court's discretion
in determining a defendant's sentence is very broad:  once the GSR
is properly calculated, "sentencing becomes a judgment call" for
the court, and the court may construct a sentence varying from the
GSR "based on a complex of factors whose interplay and precise
weight cannot even be precisely described."  Id. at *4 (internal
quotation marks omitted).  We generally respect the district
court's sentence as long as the court has provided a plausible
explanation, and the overall result is defensible.  United States
v. Dixon, 449 F.3d 194, 204 (1st Cir. 2006).

        Beyond his challenge to the eighteen-level increase in
his offense level rejected above, Innarelli does not quarrel with
the district court's calculation of the applicable GSR.  Instead,
he claims his sentence is unreasonable because the district court
failed to take sufficient account of certain personal
characteristics that, in his view, warrant a variance below the
GSR.  See 18 U.S.C. § 3553(a)(1) ("The court . . . shall consider
. . . the history and characteristics of the defendant.").

-11-

Seeing no reason to disturb Innarelli's sentence, we turn to Innarelli's third and final assignment of error.

## C.  The Restitution Order

The Mandatory Victims Restitution Act ("MVRA") compels a sentencing court to order a defendant convicted of certain crimes, including crimes against property, to make restitution to his victim.  See 18 U.S.C. § 3663A(a), (c).  The defendant must return the property to the victim or, if such return is impossible, impracticable, or inadequate, must pay the victim the value of the property on the date of its loss or on the date of sentencing, whichever is greater, minus the value of any part of the property that is returned.  Id. § 3663A(b).  The Government bears the burden of demonstrating the loss amount by a preponderance of the evidence.  Id. § 3664(e).  Ordinarily, we review an order of restitution for abuse of discretion, and findings of fact subsidiary to the order for clear error.  United States v. Mahone, 453 F.3d 68, 73 (1st Cir. 2006).  Legal conclusions associated with restitution orders are reviewed de novo.  United States v. Cheal, 389 F.3d 35, 48 (1st Cir. 2004).

Two of the victim-lenders -- Equicredit and National City -- and seven of the victim-buyers submitted impact statements to the district court describing the losses they suffered as a result of Innarelli's crimes.  The court reviewed these statements, and ordered at sentencing that Innarelli pay restitution to these two

-13-

quantities -- or at least a clarification of how the district court arrived at the figures it did -- since the court appears to have based some or all of the awards on intended loss rather than actual loss, and to have taken into account emotional damages with respect to the victim-buyers.

We deal first with the restitution awards to Equicredit and National City. As the parties suggest, the appropriate loss amount for purposes of restitution may well be lower than the loss amount for purposes of sentencing. Unlike the calculation of loss amount in sentencing, the purpose of restitution is not to punish the defendant, but to make the victim whole again by restoring to it the value of the losses it suffered as a result of the defendant's crime. See United States v. Cornier-Ortiz, 361 F.3d 29, 42 (1st Cir. 2004);[7] accord United States v. Swanson, 394 F.3d 520, 527 (7th Cir. 2005). This is necessarily a backward-looking inquiry that takes into account what actually happened, including whether the victim managed to recover some or all of the value it originally lost. See 18 U.S.C. § 3663A(b)(1)(B); Cornier-Ortiz,

---

[7] See also United States v. Corey, 77 F. App'x 7, 11-12 (1st Cir. 2003) (discussing some of the components that may be counted as part of the victim's losses); United States v. Cutter, 313 F.3d 1, 7-8 (1st Cir. 2002) (discussing the requirement of an adequate causal link between the defendant's crime and the victim's losses).

We note that, unlike forfeiture, the purpose of restitution is not to disgorge from the defendant the property he gained at the victim's expense. See United States v. Genova, 333 F.3d 750, 761 (7th Cir. 2003). Forfeiture is not an issue in this appeal.

foreclosure, as required by statute. To the extent this is true, the court erred.

We now turn to the parties' assertion that the district court also erred in the restitution awards of $10,000 to each of the seven victim-buyers. The district court stated: "The $10,000 is a rough approximation in an effort to quantify both the financial and the emotional impact that the conspiracy had upon them." This statement reveals two possible errors. First, while "absolute precision" in calculating a restitution award is not required, United States v. Burdi, 414 F.3d 216, 221 (1st Cir. 2005), and the court may resolve uncertainties "with a view towards achieving fairness to the victim," it must still make a "reasonable determination of appropriate restitution," United States v. Vaknin, 112 F.3d 579, 587 (1st Cir. 1997) (quoting S. Rep. No. 532, at 31-32 (1982), reprinted in 1982 U.S.C.C.A.N. 2515, 2536-37) (internal quotation marks omitted). We are concerned that the district court's "rough approximation" here may not have been sufficiently reflective of the losses the buyers actually incurred. See id. ("[A]n award cannot be woven solely from the gossamer strands of speculation and surmise.").

Second, the parties are correct in pointing out that the district court may not take into account the emotional impact of the conspiracy on the victim-buyers in calculating an MVRA restitution award. It bears repeating that restitution under the

-17-

forth its reasoning and the calculations leading to the amounts ordered, if any.[8]

### III.  **Conclusion**

Innarelli's sentence is **affirmed**.  The order of restitution is **vacated** and **remanded** for recalculation in a manner consistent with this opinion.

**It is so ordered**.

_____

[8]  In its brief, the Government reserves the right to argue before the district court that Innarelli should be subject to a higher fine.  We see nothing that would impede it from so arguing.  See United States v. Stern, 13 F.3d 489, 498 (1st Cir. 1994).